# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE GONZALEZ CORTES,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:14-cv-01017-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 18) |

## I.

## INTRODUCTION

Plaintiff Felipe Gonzalez Cortes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits and supplemental social security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from affective disorder, status post cholecystectomy, small calcification at L5, bilateral carpal tunnel syndrome, fibromyalgia and diabetes mellitus.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 21, 2011, and a Title XVI application for supplemental security income on July 26, 2011. (AR 128, 164.) Plaintiff's applications were initially denied on January 19, 2012, and denied upon reconsideration on June 20, 2012. (AR 209-213, 217-221.) Plaintiff requested and received a hearing before Administrative Law Judge Tamia N. Gordon ("the ALJ"). Plaintiff appeared for a hearing on January 30, 2013.[2] (AR 42-66.) On March 8, 2013, the ALJ found that Plaintiff was not disabled. (AR 13-26.) The Appeals Council denied Plaintiff's request for review on May 6, 2014. (AR 1-3.)

### A.   Hearing Testimony

Plaintiff testified at the January 30, 2013 hearing with the assistance of an interpreter and was represented by counsel. (AR 44-58; 60-62.) Plaintiff was born on February 5, 1965 and was forty-eight years old on the date of the hearing. (AR 47-48.) Plaintiff is 5 foot 7 inches tall and weighs 185 pounds. (AR 60.) Plaintiff completed secondary grades in Mexico and went to adult school to obtain his GED. (AR 48.) Plaintiff is attending college to obtain an associate's degree. (AR 48.)

Plaintiff can speak and understand some English. (AR 48.) Plaintiff can read and write in English and is attending English as a Second Language classes at City College. (AR 49.) Plaintiff is in the disabled student program. (AR 49.) Plaintiff sits in the front of the class so he can see the blackboard; he can get up every 20 to 30 minutes because he cannot sit very long, and goes to the restroom frequently. (AR 49-50.) Plaintiff has pain in his lower back if he sits too long due to an accident when he fell at work. (AR 50.) Plaintiff has been diagnosed with fibromyalgia and has pain in different parts of his body. (AR 50.) Plaintiff has a note keeper because he sometimes has difficulty working rapidly enough to write down what is on the

---

[2] The record also contains a transcript of a hearing on June 21, 2011, before ALJ Sharon Madsen, prior to Plaintiff filing the current application for benefits (AR 67-103), and the notice of unfavorable decision dated July 1, 2011 (AR 104-120).

1  blackboard.  (AR 51.)  Plaintiff has a cart to carry his supplies.  (AR 51.)  Plaintiff also receives
2  extra time to take tests and extra breaks to stretch and walk around.  (AR 51-52.)

3  Plaintiff has a driver's license and drives daily.  (AR 48.)  Plaintiff attends classes for one
4  hour on Monday and Wednesday and two hours on Tuesday and Thursday.  (AR 52.)  During the
5  two hour classes Plaintiff stands up or walks around during the class.  (AR 52.)  Plaintiff is
6  receiving mostly As in his classes and has a grade point average of 3.6.  (AR 56.)

7  Plaintiff last worked full-time in 2008 washing cars.  (AR 52-53.)  Plaintiff sprayed the
8  cars with a high pressure hose.  (AR 53.)  Prior to that, Plaintiff worked full-time in a packing
9  house packing oranges and lemons.  (AR 53.)  Plaintiff does not believe that he can work now
10 because he tries to do chores at home in the yard and cannot because he has too much pain.  (AR
11 54.)

12 Plaintiff has pain in various areas of his body.  (AR 54.)  The pain is about the same
13 everywhere and is constant, but is relieved when he takes his medication.  (AR 54.)  Nothing
14 aggravates Plaintiff's pain. (AR 56.)  Plaintiff has lost twenty pounds and does not notice any
15 change in his fibromyalgia symptoms.  (AR 61.)  Plaintiff also takes medication for depression.
16 (AR 61.)  Plaintiff's medication causes nausea and makes him sleepy.  (AR 54.)  Plaintiff is able
17 to sit in a chair for about ten minutes before needing to stand up due to back pain.  (AR 55.)
18 Plaintiff can walk for ten minutes, lift ten pounds, and lies down to rest seven to nine hours
19 during the day due to pain.  (AR 55-56.)  Plaintiff can only concentrate for twenty minutes
20 before needing a ten minute break.  (AR 56.)

21 Plaintiff received injections for carpal tunnel.  (AR 57.)  He uses a computer at home.
22 (AR 57.)  Plaintiff is able to handle all his own personal care.  (AR 57-58.)  Plaintiff can pick up
23 change off a table.  (AR 58.)

24 A vocational expert ("VE"), Cheryl Chandler, also testified at the hearing.  (AR 58-65.)
25 The VE described Plaintiff's past employment as an automobile detailer, DOT 915.687-034,
26 unskilled, SVP 2, medium; and material handler, DOT 929.687-030, semiskilled, SVP 3, heavy.
27 (AR 59.)  Plaintiff performed these jobs as generally performed in the national economy.  (AR
28 60.)  The ALJ proffered a hypothetical of an individual of Plaintiff's age, education, and past

work experience with the residual functional capacity to perform light work, but must avoid concentrated exposure to excessive vibration.  (AR 62.)  The VE found that this individual would not be able to perform Plaintiff's past work.  (AR 62.)  The VE opined that this individual, able to have simple conversation in English, would be able to work as a ticket taker, DOT 344.677-010, light, unskilled, SVP 2, with 11,000 jobs in California and 85,000 nationally; cashier, DOT 211.462-010, light, unskilled, SVP 2, 119,600 jobs in California and 1,130,000 nationally; and a courier, DOT 230.663-010, light, unskilled, SVP 2, 15,000 jobs in California and 115,400 nationally.  (AR 63-64.)

The ALJ proffered a second hypothetical of an individual with the same limitations, but without English communication skills.  (AR 64.)  The VE opined that this individual could work as a housekeeper, DOT 323.687-014, light SVP 2, 44,000 jobs in California and 134,000 jobs nationally; silverware wrapper, DOT 318.687-018, unskilled, light, SVP 1, 15,800 jobs in California and 140,000 nationally; and garment sorter, DOT 222.687-014, light, unskilled, SVP 2, 21,000 jobs in California and 223,000 nationally.  (AR 64-65.)

The VE proffered a third hypothetical of the same individual who was unable to engage in sustained work activity for a full eight-hour workday on a regular and consistent basis.  (AR 65.)  The VE opined that there would be no work for this individual in the local or national economy.  (AR 65.)

### B.     ALJ Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2012;
- Plaintiff has not engaged in substantial gainful activity since December 1, 2008, the alleged onset date;
- Plaintiff has the following severe impairments: fibromyalgia and diabetes mellitus;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments;

4

- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.157(b) and 416.967(b) except that he must avoid concentrated exposure to excessive vibration. No English communication;
- Plaintiff is unable to perform any past relevant work;
- Plaintiff was born on February 5, 1965 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;
- Plaintiff is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English;
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills;
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2008, through the date of the ALJ's decision.

(AR 18-25.)

### C. Medical Record

Plaintiff was seen on December 1, 2010, complaining of bilateral knee pain for months and a history of chronic neck pain, bilateral and elbow pain due to work injuries. (AR 359.) Plaintiff was found to have some mild back tenderness and bilateral wrist pain. (AR 359.) Plaintiff was diagnosed with arthralgia of unclear etiology or tendonitis. (AR 359.) Plaintiff was sent out for lab work which all returned relatively normal other than some elevated blood labs. (AR 360-375.) On December 7, 2010, Plaintiff was seen complaining of tenderness in his wrist, elbows, and ankles. (AR 358.) The record notes bilateral tenderness to hands, wrist, and elbows. (AR 358.)

Plaintiff was seen on January 18, 2011, complaining of pain in his shoulder, bilateral elbows and hands. (AR 357.) Examination of his shoulder and hands showed full range of

1 motion. (AR 357.) The record notes arthralgias unclear etiology, possibly stress related. (AR
2 357.)

3 On February 4, 2011, Plaintiff was seen complaining of multiple muscle pains. (AR
4 356.) The record notes multiple tender points and that an appointment with a rheumatologist is
5 pending. (AR 356.) Plaintiff's condition is stable and his diagnosis is fibromyalgia. (AR 356.)

6 On May 11, 2011, Plaintiff was seen complaining of multiple tender points, forearms,
7 shoulders, elbows, thighs and feet. (AR 355.) The record notes tenderness throughout. (AR
8 355.) Plaintiff's condition is stable. (AR 355.) On May 13, 2011, Plaintiff was seen with an
9 evaluation form for disability. (AR 353.) The record notes tender multiple points. (AR 353.)
10 Plaintiff's condition is stable. (AR 353.) On May 26, 2011, Plaintiff was seen complaining of
11 multiple tender muscles. (AR 352.) The record notes tender upper and lower extremities to
12 palpation with pain. (AR 352.) Plaintiff's condition is stable. (AR 352.)

13 Plaintiff was seen on June 7, 2011 complaining that the Tramadol caused him to have
14 diarrhea. (AR 350.) The record notes multiple tender muscles, shoulders, elbows, bilateral feet,
15 legs, and thighs and that the medication has helped with his pain for two to three hours. (AR
16 350.)

17 On July 1, 2011, Plaintiff saw Dr. Garcia for eye pain and was diagnosed with
18 conjunctivitis. (AR 349.) Dr. Garcia saw Plaintiff on July 7, 2011 with a history of mild
19 elevated "LFT"; Plaintiff's examination was unremarkable and his condition was stable. (AR
20 346.) Plaintiff was seen again on August 18, 2011, the record notes tenderness 22 points and that
21 Plaintiff's condition is stable. (AR 348.)

22 Dr. Garcia saw Plaintiff and completed a Fibromyalgia Residual Function Questionnaire
23 on September 8, 2011. (AR 340-344.) Treatment notes indicate that Plaintiff's chief complaint
24 was diarrhea on and off. (AR 345.) Plaintiff complained on tender muscle areas in his shoulder,
25 arms, legs, and back and was out of his Tramadol. (AR 345.) Plaintiff had increased stress,
26 tiredness, numbness and tingling. (AR 345.) Dr. Garcia noted tenderness in the upper
27 extremities, lower extremities, back, and hips. (AR 345.) Plaintiff's medication was refilled.
28 On the Fibromyalgia Residual Function Questionnaire, Dr. Garcia stated that Plaintiff

6

had been seen on an average of every six to eight weeks since December 1, 2010. (AR 340.) Dr. Garcia found that Plaintiff met the criteria for fibromyalgia and also had bilateral elbow tendonitis and "OA" in his hands. (AR 340.) Plaintiff was stable. (AR 340.) Dr. Garcia identified "multiple tender points, chronic diarrhea [, and] LAB work-up [negative] as the findings that supported the impairment. (AR 340.) Plaintiff's symptoms were identified as multiple tender points, morning stiffness, anxiety, depression, numbness and tingling, chronic fatigue, panic attacks, insomnia, and nonrestorative sleep. (AR 340.) Dr. Garcia identified Plaintiff's pain in the lumbosacral and cervical spine, and shoulders, arms, hands/fingers, hips, legs, knees/ankles/feet bilateral. (AR 341.) The pain was described as "Transient/changes/but daily multiple tender pain." (AR 341.) The factors that precipitate pain were movement/overuse, stress, and cold. (AR 341.) Dr. Garcia stated that Plaintiff was not a malinger. (AR 341.)

Dr. Garcia stated that emotional factors contribute to the severity of Plaintiff's symptoms and limitations. (AR 341.) Plaintiff's pain is sufficiently severe to interfere with attention and concentration constantly and Plaintiff was moderately limited in his ability to deal with work stress. (AR 341.) Plaintiff had drowsiness and dizziness from his medication. (AR 341.) Dr. Garcia opined that Plaintiff had daily pain that makes him unable to function and uses very sedating medication. (AR 342.) Plaintiff was able to walk two to three blocks on a good day and one block on a bad day. (AR 342.) Plaintiff could sit, stand or walk less than two hours. (AR 342.) Plaintiff needed to walk during an eight hour workday; needed to shift positions at will from sitting, standing, and walking; would sometimes need to lie down at unpredictable intervals; and cannot tolerate prolonged sitting. (AR 342.) Plaintiff could occasionally lift ten pounds or less and never lift twenty pounds or more. (AR 342. Plaintiff had significant limitations in reaching, handling, and fingering due to pain. (AR 342.) Plaintiff could occasionally bend at the waist with pain. (AR 343.) Plaintiff's impairments would cause him to be absent from work more than three times per month. (AR 343.) Plaintiff has fatigue, weakness, lack of endurance, numbness/tingling, reflux esophagitis, irritability, nervousness, and sensitivity to cold/heat/light/humidity. (AR 343.)

On September 29, 2011, Plaintiff was examined by Dr. Roger Wagner. (AR 382-386.) Plaintiff reported bilateral carpal tunnel syndrome, but Dr. Wagner noted that when questioned about his symptoms he only complains of joint pain in his hands with some vague complaints of weakness. (AR 382.) Dr. Wagner found that Plaintiff had good strength in both hands upon examination and Plaintiff does not complain of any numbness in his hands. (AR 382.) Dr. Wagner noted a slightly positive Tinel's on the wrists and hands bilaterally. (AR 382.) Dr. Wagner noted that Plaintiff complains primarily of poly arthralgias in the shoulders, elbows, knees, hands and feet and he noted no swelling in any of the joints. (AR 382.) When questioned about the trigger points for fibromyalgia, Plaintiff "really does not tell [Dr. Wagner] of any typical trigger points," again pointing to his knees, shoulders, hands, etc. (AR 382-383.) Plaintiff does not give any complaints of feeling mental fog or problems sleeping other than pain. (AR 383.)

Plaintiff reports that he lives with his wife and two children and does all the cooking and cleaning while his wife works. (AR 383.) Plaintiff does light yard work, leaving the rest to his adult son. (AR 383.) Plaintiff drives, shops, performs all his own activities of daily living without assistance, and gets a little exercise by walking. (AR 383.) Dr. Wagner observes that Plaintiff is easily able to get up and out of the chair in the waiting room and walk to the examination room without assistance. (AR 383.) Plaintiff sat comfortably and was able to easily get off the examination table. (AR 383.) Plaintiff was very easily able to bend at the waist to take off his shoes and put them back on, demonstrating good limberness in all of the joints in his legs. (AR 383.) Plaintiff's examination was unremarkable. (AR 384-385.) He was very easily able to walk on his toes and heels and did not complain of any knee or back pain. (AR 384.) Plaintiff did complain of some metatarsal phalangeal joint pain. (AR 384.)

Dr. Wagner found that Plaintiff had some very mild lumbar paravertebral muscle tenderness, but noted it was difficult to tell if there were any true trigger points anywhere else as Plaintiff appeared to grimace a little bit no matter where he was touched. (AR 385.) Plaintiff did not appear to be uncomfortable at any point during the examination. (AR 385.) Plaintiff's muscle strength was 5/5 bilaterally in the upper and lower extremities, including grip strength.

(AR 385.) Plaintiff did appear to have a slightly positive Tinel's of both wrists, but not the elbows. (AR 385.) Dr. Wagner found:

> The claimant primarily complains of poly arthralgias, he has been documented to have some mild degenerative joint disease in the hands, via some x-rays he brings in; however the shoulders have no degenerative joint disease. He complains of pain there. The knee exams are completely normal bilaterally. He did have a bit of tenderness in the toes; however I did not note any swelling around any of the joints, no signs of any inflammatory arthritis. It seems most consistent with some mild vague arthritis.

(AR 385-386.) Dr. Wagner opined that Plaintiff had no limitations based upon his examination. (AR 386.)

On October 25, 2011, Dr. Mary McDonald conducted a psychiatric evaluation of Plaintiff. (AR 389-394.) Plaintiff told Dr. McDonald that he has been diagnosed with fibromyalgia and the symptoms bother him all the time and prevent him from doing any type of work. (AR 389.) Plaintiff revealed that he has a gambling problem and has credit card debt between $50,000.00 to $60,000.00. (AR 390.) Additionally, Plaintiff indicated that he has a problem with his gender identity and is homosexual, but he has not told his wife. (AR 390.) Plaintiff was raped when he was 8 by older boys and believes that is why he is gay. (AR 390.) Plaintiff was born in Mexico and came to the United States when he was 19. (AR 391.)

Plaintiff's cognitive abilities were found to be within the average range. (AR 391.) He was oriented to person, place and time. (AR 391.) His attention and concentration were excellent. (AR 391.) Memory for recent information was not impaired. He could correctly recall items at one and five minute intervals. (AR 391.) Affect was within normal limits and behavior was appropriate. (AR 391.)

Plaintiff's thought processes were clear, logical and organized. (AR 392.) Plaintiff stated he had difficulty sleeping due to racing thoughts and has been gaining weight due to stress. (AR 392.) Plaintiff's mood was euthymic.[3] (AR 392.) Plaintiff was found to have some anxiety over his sexual identity and an impulse control problem. (AR 392.) He was diagnosed with pathological gambling; impulse control disorder, NOS; adult antisocial behavior;

---

[3] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

adjustment disorder with depressed mood; and identity problem; and had a GAF of 65. (AR 392.) Plaintiff was found to be unimpaired psychologically. (AR 392-393.)

On December 14, 2011, Plaintiff was seen complaining of increased tenderness. (AR 412.) The record notes tenderness in his shoulder, chest, hips, and legs. (AR 412.)

Plaintiff was seen on May 22, 2012, complaining of continued moderate to severe muscle pain. (AR 410.) The record notes that his permanent disability is pending with social security and notes multiple tender muscle groups. (AR 410.)

On June 12, 2012, Plaintiff was seen for a headache and ear pain that had lasted for several days. (AR 409.) He was diagnosed with a tension headache and sinusitis. (AR 409.)

On July 20, 2012, Plaintiff was seen complaining of throat dryness for several days. (AR 407.) Plaintiff was seen on July 23, 2012, for acute tonsillitis and stated he was doing a little better. (AR 406.)

On November 19, 2012, Dr. Garcia completed a physical capacity evaluation. (AR 403-404.) Dr. Garcia opined that Plaintiff could sit, stand, or walk one hour in an eight hour workday and must alternately sit or stand every thirty minutes to relief pain. (AR 403.) Plaintiff could occasionally lift up to 25 pounds with pain, but never lift more than 25 pounds. (AR 403.) Plaintiff can use his feet for repetitive movements with pain. (AR 403.) Plaintiff can occasionally bend, squat, crawl, climb, kneel, and stoop with pain. (AR 403.) Plaintiff has a total restriction from extreme hot or cold and mild restrictions from wetness, humidity, noise, vibration, fume, odors, dust, gases, poor ventilation, and hazards. (AR 403.) Dr. Garcia opined that these restrictions became effective on November 19, 2012 when Plaintiff was diagnosed with diabetes. (AR 404.)

### III.

### LEGAL STANDARD

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff challenges the non-disability finding on the ground that the ALJ failed to offer specific and legitimate reasons to reject the opinion of his treating physician and his subjective pain testimony.

### A. Plaintiff's Testimony

Plaintiff contends that the ALJ's reasons merely amount to boilerplate language and did not offer specific and legitimate reasons to reject his subjective pain testimony. Defendant counters that benefits cannot be awarded based on Plaintiff's subjective complaints and the ALJ provided a valid basis that is supported by substantial evidence to reject Plaintiff's testimony.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th

1  Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to
2  show that her impairment could be expected to cause the severity of the symptoms that are
3  alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80
4  F.3d at 1282.

5  Second, if the first test is met and there is no evidence of malingering, the ALJ can only
6  reject the claimant's testimony regarding the severity of his symptoms by offering "clear and
7  convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social
8  Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that
9  support this conclusion and the findings must be sufficiently specific to allow a reviewing court
10 to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not
11 arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.
12 2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a
13 claimant's subjective pain and symptom testimony include the claimant's daily activities; the
14 location, duration, intensity and frequency of the pain or symptoms; factors that cause or
15 aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other
16 measures or treatment used for relief; functional restrictions; and other relevant factors.
17 Lingenfelter, at 1040; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  In assessing the
18 claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility
19 evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning
20 the symptoms, and other testimony by the claimant that appears less than candid; [and] (2)
21 unexplained or inadequately explained failure to seek treatment or to follow a prescribed course
22 of treatment. . . ."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen,
23 80 F.3d at 1284).

24 The Court finds that the ALJ offered more than mere boilerplate language in addressing
25 Plaintiff's credibility.  The ALJ found that Plaintiff's "medically determinable impairments
26 could reasonably be expected to cause the alleged symptoms; however the claimant's statements
27 concerning the intensity, persistence and limiting effects of these symptoms are not entirely
28 credible for the reasons explained in this decision. (AR 20-21.)  The ALJ then went on to detail

the medical evidence, and Plaintiff's testimony regarding his educational pursuits and activities of daily living. (AR 21-22.) The ALJ then concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, which does incorporate certain limitations that are well supported by the medical evidence of record. Claimant's ability to do light housework, all personal needs, some shopping, easy meal preparation, and drive, are inconsistent with the alleged presence of a condition that would preclude all work activity.

(AR 23.)

The ALJ noted that Plaintiff does all the cooking and cleaning while his wife works, light yard work, drives, shops, and cares for his activities of daily living without assistance; Plaintiff attends community college four days per week with a 3.6 GPA with minimal accommodations; walks for exercise; and demonstrated good limberness at his consultative examination. (AR 22; 23).

Plaintiff testified that he has to lie down to rest seven to nine hours during the day due to pain and that it takes him the whole day to complete his chores. (AR 55-56, 304.) Plaintiff stated that he had to rest between each chore that he completed. Yet, he attends school four days per week (AR 52); does light yard work and all of the cooking and cleaning while his wife is at work (AR 383); does laundry (AR 302); and goes grocery shopping two to three times per week (AR 303). The ALJ properly considered that Plaintiff's reported daily activities were not consistent with his complaints of disabling pain. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ also considered that the medical record did not support Plaintiff's allegations that his pain prevented him from working. While Plaintiff testified that the longest he is able to pay attention was twenty minutes (AR 56), Dr. McDonald examined Plaintiff on October 25, 2011 and found that his attention and concentration were excellent. (AR 23, 391.) On his consultative psychological examination, Dr. McDonald found that Plaintiff had a Global Assessment of Functioning of 65 which indicates mild symptoms, but generally functions pretty well. (AR 23.) Plaintiff's memory for recent information was not impaired. (AR 391.) Dr.

McDonald found that psychologically Plaintiff was unimpaired. (AR 393.) Similarly, Plaintiff attends a one hour class two days a week and two hour classes two days per week and is able to maintain a 3.6 grade point average while claiming to miss ten to twenty minutes of each hour of class due to his inability to concentrate. (AR 52, 56, 334-339.)

Although Dr. Garcia prepared two check box forms that indicated Plaintiff was severely limited in his functioning, the ALJ found these forms to be unsupported by the medical record. (AR 21-22.) Dr. Wagner examined Plaintiff and found that he had no limitations. (AR 22.) On October 31, 2011, Dr. Ombres, an agency physician, reviewed the medical record and found that Plaintiff's complaints are not corroborated on physical examination and that Plaintiff did not fit the trigger points of fibromyalgia. (AR 138.) Furthermore, on June 14, 2012, Dr. Jackson reviewed the medical record and found that the evidence does not support fibromyalgia. (AR 182-185.) Dr. Jackson found that if Plaintiff had fibromyalgia it did not last twelve months and has since improved. (AR 182.)

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective complaints that are supported by substantial evidence in the record.

**B.    Treating Physician**

Plaintiff also contends that the ALJ erred by rejecting the opinion of his treating physician. Defendant counters that the ALJ properly rejected Dr. Garcia's opinions because they were inconsistent with the medical record and Plaintiff's activities.

The weight to be given to medical opinions depends upon whether the opinion is

proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substance evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Andrews, 53 F.3d at 1041.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Although Dr. Garcia had been Plaintiff's treating physician, his opinion was contradicted by other medical opinions and evidence. Therefore, the ALJ could reject the opinion for "specific and legitimate reasons" supported by substantial evidence in the record. Orn, 495 F.3d at 632-33. The ALJ gave only limited weight to the opinions of Dr. Garcia because they were inconsistent with the objective findings noted in his treatment records and the very conservative nature of the treatment provided, as well as Plaintiff's activities as discussed above. (AR 22.) Plaintiff argues that Dr. Garcia's treatment notes do not contain objective findings because such findings do not exist. However, the fact that laboratory tests do not exist to diagnose fibromyalgia does not lead to the conclusion that there are no findings required to diagnose the

condition.

The Fibromyalgia Residual Function Capacity Questionnaire asks if the patient meets the American College of Rheumatology criteria for fibromyalgia. (AR 340.) Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). There are common symptoms that include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." Benecke, 379 F.3d at 589-90. "The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Id. at 590. The issue the ALJ addressed is that Dr. Garcia's notes do not reflect the common symptoms associated with fibromyalgia.

Plaintiff argues that the ALJ's decision is indicative of an extreme lack of medical understanding of the nature of fibromyalgia, however, this appears to be the reason that the ALJ found it appropriate to give some weight to the opinions of the agency physicians, "particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." (AR 23.) Where the existence of the condition is based solely upon the complaints of the claimant, a medical opinion on whether those complaints are sufficient to diagnose the existence of fibromyalgia is significant. On October 31, 2011, Dr. Ombres reviewed Dr. Garcia's treatment notes and found that Plaintiff's complaints are not corroborated on physical examination and that Plaintiff did not fit the trigger points of fibromyalgia. (AR 138.) Similarly, on June 14, 2012, Dr. Jackson reviewed the medical record and found that the evidence does not support fibromyalgia. (AR 182-185.) Dr. Jackson found that if Plaintiff had fibromyalgia it did not last twelve months and has since improved. (AR 182.)

The ALJ gave great weight to the opinion of Dr. Wagner as he had the opportunity to examine Plaintiff and his conclusions are consistent with his objective findings. (AR 22.) Dr. Wagner found that when questioned about the trigger points for fibromyalgia, Plaintiff "really does not tell [Dr. Wagner] of any typical trigger points," again pointing to his knees, shoulders, hands, etc. (AR 382-383.) Plaintiff did not have any swelling in any joint. (AR 382.) Plaintiff

did not give any complaints of feeling mental fog or problems sleeping other than pain. (AR 383.) Dr. Wagner observed that Plaintiff was easily able to get up and out of the chair in the waiting room and walk to the examination room without assistance. (AR 383.) Plaintiff sat comfortably and was able to easily get off the examination table. (AR 383.) Plaintiff was very easily able to bend at the waist to take off his shoes and put them back on, demonstrating good limberness in all of the joints in his legs. (AR 383.)

Similarly, the ALJ gave great weight to the opinion of Dr. McDonald as she is a licensed mental health provider, the opinion is consistent with Plaintiff's demonstrated abilities during the examination, his success in the college setting, as well as the ALJ's observations during the hearing. (AR 23.) Dr. McDonald found that Plaintiff had excellent concentration and attention. (AR 23.) Whether Plaintiff had "mental fog" or sleep disturbance indicative of fibromyalgia would be a medical opinion on which the ALJ would need to rely on the medical opinions.

Here, the medical evidence is contradictory as Dr. Garcia found that Plaintiff had fibromyalgia and was severely limited by his symptoms. However, Dr. Garcia's treatment records are brief and conclusory. The ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsupported by clinical findings. Tonapetyan, 242 F.3d at 1149. Dr. Garcia's treatment records generally state that there are multiple tender points, and the agency physicians found that Dr. Garcia's records do not demonstrate that Plaintiff meets the criteria for fibromyalgia.

Further, Dr. Garcia stated in the form completed on September 8, 2011 that Plaintiff had morning stiffness, anxiety, depression, chronic fatigue, panic attacks, insomnia, and nonrestorative sleep. (AR 340.) However, Dr. Garcia's treatment notes do not record that Plaintiff had any of these symptoms nor do the findings address any of these areas. Similarly, Dr. Garcia opined that Plaintiff's pain is sufficiently severe to interfere with attention and concentration constantly. (AR 341.) Yet, Dr. Garcia's treatment notes make no such findings. Finally, although Dr. Garcia referred Plaintiff to a rheumatologist, the record is devoid of any records showing that Plaintiff sought such treatment for his symptoms. (AR 356.) The ALJ gave only limited weight to Dr. Garcia's opinions due to these inconsistencies in his treatment

records and the conservative treatment provided. (AR 21.)

While Dr. Garcia diagnosed Plaintiff with severely limiting fibromyalgia, the agency physicians found that the evidence did not support the diagnosis of fibromyalgia. Additionally, Dr. Wagner examined Plaintiff and found that Plaintiff did not report the trigger points of fibromyalgia, had no joint swelling, and was not limited in his ability to work. Dr. McDonald found that Plaintiff's concentration and attention were excellent. Where, as here, the opinion of the Plaintiff's treating physician is contradicted, and the opinion of the consultative examiner is based on independent clinical findings that differ from those of the treating physician, it is solely the province of the ALJ to resolve the conflict. Andrews, 53 F.3d at 1041.

The ALJ provided "specific and legitimate reasons" supported by substantial evidence in the record to reject the opinion of Dr. Garcia. Ryan, 528 F.3d at 1198.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in rejecting Dr. Garcia's opinion and determining Plaintiff's credibility. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Felipe Gonzalez Cortes. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**July 27, 2015**__

UNITED STATES MAGISTRATE JUDGE

18